UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RICHARD GALLEGOS, JR.              CIVIL ACTION

VERSUS                                      NO. 18-4925 C/W
18-8752

OFFICER McCUBBINS ET AL.           SECTION "F" (2)

**REPORT AND RECOMMENDATION**;
**ORDER AND REASONS ON MOTIONS**

Plaintiff, Richard Gallegos, Jr., was a prisoner incarcerated in the Orleans Justice Center ("OJC") in New Orleans, Louisiana, from March 15 until September 16, 2018. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against New Orleans Police Officer McCubbins and other unnamed parties. Record Doc. No. 1. This matter was subsequently consolidated with C.A. No. 18-8752, which was filed by Gallegos against Orleans Parish District Attorney Leon Cannizzaro, Orleans Parish Assistant District Attorney Hilary Khoury, Orleans Parish Public Defender Aaron Zagory, Orleans Parish Criminal District Court Judge Karen Herman, and Housing Authority of New Orleans Police Officers Kevin Doucette and Terrence Varnado. Record Doc. No. 44.

Gallegos asserts claims based on his arrest on March 15, 2018, and incarceration from that time until September 16, 2018. On March 15, 2018, Gallegos claims that he was arrested without probable cause and falsely charged with three counts of aggravated assault with a firearm (La. Rev. Stat. § 14:37.4) and three counts of committing a hate crime (La. Rev. Stat. § 14:107.2). Record Doc. No. 1. He alleges that he was unlawfully detained

pursuant to this unlawful arrest and asserts claims based on the conditions of his confinement and a failure properly to treat his medical conditions. Id. Gallegos seeks compensatory damages, punitive damages and declaratory judgment. Id. He also asserts claims arising from his criminal conviction, including: 1) District Attorney Cannizaro, Assistant District Attorney Khoury and Public Defender Aaron Zagory failed to produce exculpatory evidence at trial; 2) Judge Herman failed to provide or subpoena exculpatory evidence; and 3) Officers Varnado and Doucette lied on the stand. C.A. No. 18-8752, Record Doc. No. 1. Gallegos seeks compensatory damages for false imprisonment, mental anguish and defamation of character for those claims. Id.

On August 7, 2018, I conducted the first of two conferences in this matter. Participating via telephone were plaintiff pro se; and Freeman Rudolph Matthews, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny. On September 20, 2018, I conducted a follow-up conference in which plaintiff pro se appeared in person; and Jezreel Joseph and Isaka Williams, counsel for defendants, participated by telephone. Plaintiff was again sworn and testified for all Spears purposes.

## **THE RECORD**

During the August 7, 2018, Spears hearing, plaintiff testified that he was then incarcerated at the Orleans Justice Center. Plaintiff confirmed that he was arrested for "six felonies," three counts of aggravated assault with a firearm and three counts of committing

- 2 -

a hate crime. Plaintiff testified, however, that he was then charged solely with "aggravated assault with a dangerous weapon," and all other charges had been dismissed. Plaintiff testified that his criminal trial was supposed to take place in May 2018, but was continued until the following day, August 8, 2018.

Under these circumstances, I rescheduled the conference and ordered plaintiff to send a one-page report of the trial outcome after its conclusion. Plaintiff informed me that he also wanted to file "a supplemental complaint" concerning jail conditions. Plaintiff maintained that he wished to proceed on his false arrest claim, but testified that he did not assert any excessive force claim concerning a 2017 incident, which he had described in his written submissions only as background for his other claims.

On August 23, 2018, plaintiff advised in writing that he had been found guilty at his criminal trial, and he submitted additional allegations concerning the conditions of his confinement at OJC, in connection with his motions to supplement and for injunctive relief. Record Doc. Nos. 18-22; 26-36.

During the follow-up September 20, 2018, Spears hearing, plaintiff testified that he had been released from OJC on September 16, 2018. He provided a current address of 3042 Gentilly Boulevard, New Orleans, LA 70122. Plaintiff testified that he had been convicted at trial of the criminal charge against him, but that he had submitted an appeal to the Louisiana Fourth Circuit Court of Appeal, which had not ruled on the matter. I informed

him that, because of his conviction, his claim of false arrest would be dismissed with prejudice as a matter of law, pursuant to Heck v. Humphrey, 512 U.S. 477 (1994).

Plaintiff then testified regarding his conditions of confinement at OJC. As to his claim of inadequate access to legal materials, plaintiff testified that there was "no law library whatsoever" at OJC, which "[interfered] with [his] First Amendment right of access to the court . . . in connection with the difficulties [he] had filing this lawsuit." He stated that legal materials must be requested for delivery to the inmates "on the kiosk" located in OJC, and then "legal services sends you information on what your present charges are." He also said, "You can make a request for maybe state statutes, and they give them to you on the kiosk machine, but anybody trying to do any legal research, it is very inadequate." Plaintiff testified that he needed these legal materials for "civil matters. . . . like the one that is present at the time."

Gallegos also complained that fellow inmates were not made to follow the guidelines in the prison handbook; specifically, that television sets were set to a high volume and not turned off during lockdown times, in violation of rules in "the inmate handbook."

Plaintiff complained about the OJC policy denying prisoners the right to possess nail clippers, even though "when [the inmates had] them originally and [the prison officials] put them out, [the inmates] stole them." Despite this, plaintiff asserted that the nail clippers "should be readily available for the ones that use them like they are supposed to be used."

- 4 -

He complained that there was a "four-month hold on . . . ordering" nail clippers. He also complained about the fact that he was never given underwear during his incarceration, but instead wore a pair that he "found . . . in the trash" and then later "found some more underwear." Ironically, he testified that he was not wearing underwear at the time of his arrest on the street, but expected it to be provided in jail. Finally, plaintiff testified that the fixtures in the showers and the faucets were built "[using] the wrong hardware" and are moldy and rusty. Plaintiff testified that he suffered "no harm," including physical injuries, as a result of any of these conditions.

Concerning his claims of inadequate medical care, plaintiff testified as background that in the past he has been "committed [to mental health facilities] three times," the most recent of which was at "DePaul . . . in New Orleans." Plaintiff testified that at OJC he was not treated for these mental conditions, which he described as "psychotic" and "schizophrenic." He testified that he received no medications for those conditions, and as a result suffered "something in [his] mind, nightmares, inability to sleep, and . . . too many things going on in [his] mind . . . mind racing." Plaintiff further testified that he was given no medication, other than Tylenol "for. . .about 22 days through the whole course of six months." He said he had "a lot" of pain from his preexisting physical injuries, including when "[he] was hit by a taxicab . . . . had [his] plateau tibia knocked off . . . fibula broken . . . [and a] Lisfranc fracture in . . . [his] right foot." He also testified that he requested but did not receive "x-rays [for his] bad [rotator] cuffs."

- 5 -

When asked about the accuracy of his verified OJC medical records, Record Doc. No. 24, which indicate that he was treated by a chronic care facility starting on April 4, 2018, with follow-up visits on April 10, May 2, and May 4, 2018, plaintiff testified that these visits were only ". . . [to keep his] Keppra going." Plaintiff identified Keppra as seizure medication, and stated that he received this medication while at OJC "twice a day." His medical records indicate, and plaintiff confirmed, that his "[s]eizures [were] fairly controlled," and that his "[c]ondition [was] stable." His medical records also indicate, and plaintiff confirmed, that he "saw the doctor . . . one, two, maybe three times" in the chronic care facility, and that he saw a nurse "most of the time." Plaintiff testified, and his medical records confirm, that he was given Tums and Prilosec for his "high acid reflux." His medical records also indicate he returned to the chronic care facility in August, and plaintiff confirmed that "sounds about right." Plaintiff testified, finally, that he "was having some bad headaches and dizziness, and . . . was kind of concerned about that. [He] wanted . . . to go get rescanned and check [his] brain. . . . [He wanted the medical personnel to] take an x-ray and make sure there was no more blood on [his] brain, [but] that never got done."

After the follow-up hearing, plaintiff filed two (2) motions for leave to amend his complaint. Record Doc. Nos. 39, 40. These motions relate to the same complaints of wrongful arrest and conditions of confinement at OJC addressed in his other filings.

## ANALYSIS

I.   STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless of whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); Thompson v. Hicks, 213 F. App'x 939, 942 (11th Cir. 2007); Lewis v. Estes, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir. 2006); Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998);  Lewis v. Sec'y, DOC, 2013 WL 5288989, at *2 (M.D. Fla. Sept. 19, 2013), aff'd, 589 F. App'x 950 (11th Cir. 2014).  After review in the screening process, the court must "identify cognizable claims or dismiss the complaint" if it or portions of it are frivolous or fail to state a claim upon which relief can be granted.  28 U.S.C. § 1915A(b)(1); Lewis, 589 F. App'x at 952; Thompson, 213 F. App'x at 942; Shakur, 391 F.3d at 113; Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact."  Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994)

- 7 -

(quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S. Ct. 1728 (1992)), and may consider and rely upon additional evidence, as long as it is properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents."  Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).

After a <u>Spears</u> hearing, the complaint may be dismissed, in whole or in part, as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" <u>Davis,</u> 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." <u>Moore</u>, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's consolidated complaints must be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous, because the claims lack an arguable basis in law, or under Rule 12(b)(6) in light of the testimony explaining the factual basis of the claims, or under <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994). Plaintiff's complaints, as amended by his testimony at the <u>Spears</u> hearing, fail to state a claim under

the broadest reading.[1]

## II.   HECK BARS PLAINTIFF'S WRONGFUL ARREST/CONVICTION CLAIMS

Gallegos advised the court in writing and confirmed that he was found guilty at his Orleans Parish Criminal District Court trial. After the Spears hearing, staff of this court contacted the Office of the Clerk of Court of the Criminal District Court for the Parish of Orleans and was advised that Gallegos was sentenced on August 8, 2018, to six months in prison with credit for time served. Gallegos testified that an appeal of his criminal conviction was then pending in the Louisiana Fourth Circuit Court of Appeal. However, staff of this court contacted the Office of the Clerk of Court of the Louisiana Fourth Circuit Court of Appeal and was advised that as of November 14, 2018, Gallegos had not filed an appeal.

Plaintiff clearly confirmed during his testimony that the March 15, 2018 incident is the same incident that was the basis of his conviction, for which he served a prison sentence. Thus, plaintiff's claims of false arrest and wrongful conviction, including that Officers Jarnado and Doucette lied on the stand and that the presiding judge, prosecutors and public defender participated in excluding exculpatory evidence at his trial, must be dismissed at this time under Heck v. Humphrey, 512 U.S. 477 (1994). Gallegos's conviction and confinement for aggravated assault have not been set aside in any of the

---

[1] The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel." Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir 2011) (quotation omitted); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

ways described in Heck. Thus, all claims for relief that plaintiff asserts against all defendants, challenging his arrest, confinement and conviction, are premature and must be dismissed.

In Heck, the Supreme Court held that a civil action for alleged civil rights violations that attacks the validity of state criminal charges or confinement, which have not been reversed, expunged, invalidated, or called into question by a federal court's issuance of a writ of habeas corpus, is not cognizable under Section 1983.

> [T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has **not** been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Id. at 486-87 (emphasis in original) (footnote omitted). Although the Supreme Court's decision in Heck concerned a civil action for monetary damages, the Fifth Circuit has also applied Heck when the plaintiff seeks injunctive relief. Clarke v. Stalder, 154 F.3d 186, 189 (5th Cir. 1998) (citing Edwards v. Balisok, 520 U.S. 641 (1997)).

As the United States Court of Appeals for the Fifth Circuit has found in the decisions cited below, plaintiff's Section 1983 claims of false arrest and wrongful conviction

necessarily imply the invalidity of Gallegos's conviction, and that conviction has <u>not</u> been set aside. Because the conviction still stands and has not been set aside in any of the ways set out in <u>Heck</u>, plaintiff's false arrest and wrongful conviction claims are effectively barred by <u>Heck</u>. <u>See</u> <u>Arnold v. Town of Slaughter</u>, 100 F. App'x 321, 325 (5th Cir. 2004); <u>Hainze v. Richards</u>, 207 F.3d 795, 799 (5th Cir. 2000); <u>Boyd v. Biggers</u>, 31 F.3d 279, 283 (5th Cir. 1994); <u>Wells v. Bonner</u>, 45 F.3d 90, 94 (5th Cir. 1995) (judgment in plaintiff's favor on false arrest claim would necessarily imply invalidity of conviction for interstate stalking); <u>Conlan v. King</u>, 2017 WL 1093176, at *1 (5th Cir. Mar. 22, 2017).

Thus, any claims of false arrest and wrongful conviction in violation of Section 1983 are premature and must be dismissed, until such time that Gallegos's criminal conviction is set aside. As the Fifth Circuit has noted, the dismissal of plaintiff's Section 1983 claims is with prejudice to their being asserted again until the <u>Heck</u> conditions are met. <u>Johnson v. McElveen</u>, 101 F.3d 423, 424 (5th Cir. 1996).

III.   <u>IMMUNITY OF SOME DEFENDANTS</u>

Even if the <u>Heck</u> bar was lifted, plaintiff's claims of wrongful conviction against the presiding judge and prosecutors are barred by immunity doctrines. In consolidated C.A. No. 18-8752, Gallegos has sued Orleans Parish District Attorney Leon Cannizzaro and Assistant District Attorney Hilary Khoury. Gallegos appears to assert claims against these defendants based solely on their actions as prosecutors in connection with his state court proceedings. To the extent that Gallegos asserts claims against these defendants in their

individual capacity, they are immune from suit.

Courts employ a "functional" test to determine whether officials are entitled to absolute immunity, in which they look to the "nature of the function performed, not the identity of the actor who performed it." Forrester v. White, 484 U.S. 219, 227-29 (1988); accord Hill v. City of Seven Points, 31 Fed. Appx. 835, 2002 WL 243261, at *10 (5th Cir. 2002); Hulsey v. Owens, 63 F.3d 354, 356 (5th Cir. 1995).

It is well established that prosecutors are immune from liability under Section 1983 for actions taken as an advocate in pursuit of a criminal prosecution. Cleavinger v. Saxner, 474 U.S. 193, 200 (1985); Quinn v. Roach, 326 Fed. Appx. 280, 2009 WL 1181072, at *9 (5th Cir. 2009); Hill, 2002 WL 243261, at *10. This immunity applies to a prosecutor's actions in "initiating prosecution and carrying [a] criminal case through the judicial process." Id. (quotation omitted); accord Buckley v. Fitzsimmons, 509 U.S. 259, 270, 272 (1993); Quinn, 2009 WL 1181072, at *9.

Thus, "[a] prosecutor enjoys absolute immunity from personal liability for damages under section 1983 for actions 'initiating a prosecution and . . . presenting the State's case' and those 'intimately associated with the judicial phase of the criminal process.'" Esteves v. Brock, 106 F.3d 674, 676 (5th Cir. 1997) (quoting Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976)); accord Quinn, 2009 WL 1181072, at *9; Hill, 2002 WL 243261, at *10. "A prosecutor's absolute immunity will not be stripped because of action that was in error, was done maliciously, or was in excess of his

authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." <u>Kerr v. Lyford</u>, 171 F.3d 330, 337 & n.10 (5th Cir. 1999), <u>abrogated in part on other grounds by Castellano v. Fragozo</u>, 352 F.3d 939 (5th Cir. 2003) (quotation omitted); <u>accord Champluvier v. Couch</u>, 309 Fed. Appx. 902, 2009 WL 320829, at *1 (5th Cir. 2009); <u>Hill</u>, 2002 WL 243261, at *10.

In the instant case, the actions of the district attorney and his assistants concerning the criminal charges against Gallegos in Orleans Parish form the exclusive basis of plaintiff's claims against them. The district attorney's actions in initiating and pursuing Gallegos's prosecution and conviction fall well within the ambit of the judicial phase of the criminal process for which prosecutors are immune from liability. Plaintiff has failed to allege any actions in which the district attorney or his assistants were functioning outside the scope of prosecutorial immunity. Therefore, all damages claims against these defendants in their individual capacity must be dismissed.

Plaintiff's claims against Orleans Parish Criminal District Court Judge Karen Herman are barred by judicial immunity. For more than one hundred years, judges have been held immune from liability for judicial acts done within their jurisdiction. <u>Stump v. Sparkman</u>, 435 U.S. 349, 356 (1978) (citing <u>Bradley v. Fisher</u>, 80 U.S. 335 (1871)); <u>Mays v. Sudderth</u>, 97 F.3d 107, 110 (5th Cir. 1996). "A judge, of whatever status in the judicial hierarchy, is immune from suit for damages resulting from any acts performed in [his or her] judicial role." <u>Ammons v. Baldwin</u>, 705 F.2d 1445, 1447 (5th Cir. 1983) (citations

omitted); <u>accord</u> <u>Mays</u>, 97 F.3d at 110-11. This judicial immunity applies even if a judge is accused of acting maliciously or corruptly. <u>Stump</u>, 435 U.S. at 356-57; <u>Pierson v. Ray</u>, 386 U.S. 547, 554 (1967), <u>overruled in part on other grounds by Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), <u>as recognized by Hill v. Shelander</u>, 992 F.2d 714, 716 (7th Cir. 1993); <u>Mays</u>, 97 F.3d at 110-11. Judicial officers are absolutely immune from liability for damages unless they are without jurisdiction. <u>Id.</u> at 111; <u>Dayse v. Schuldt</u>, 894 F.2d 170, 172 (5th Cir. 1990); <u>Freeze v. Griffith</u>, 849 F.2d 172, 175 (5th Cir. 1988). Thus, Gallegos's claims for damages against Judge Herman are barred by judicial immunity.

## IV.   DEFENDANT ZAGORY IS NOT A STATE ACTOR

Defendant Aaron Zagory, sued in this action under Section 1983, is an attorney who was allegedly appointed and acted as an indigent defender representing plaintiff in his state court criminal proceedings.

To be successful under Section 1983, a plaintiff must establish that a defendant has acted under color of state law in violating his rights. <u>Daniels v. Williams</u>, 474 U.S. 327 (1986). To state a claim under Section 1983, a plaintiff must show (1) deprivation of a right, privilege or immunity secured by the federal laws or Constitution (2) <u>by on eacting under color of state law</u>. <u>James v. Texas Collin County</u>, 535 F.3d 365, 373 (5th Cir. 2008); <u>Calhoun v. Hargrove</u>, 312 F.3d 730, 734 (5th Cir. 2002); <u>Mississippi Women's Med. Clinic v. McMillan</u>, 866 F.2d 788, 791 (5th Cir. 1989). Thus, plaintiff must show that Zagory's actions are "fairly attributable to the state." <u>West v. Atkins</u>, 487 U.S. 42, 49 (1988); <u>accord</u>

Johnson ex rel. Wilson v. Dowd, 305 Fed. Appx. 221, 2008 WL 5212795, at *2 (5th Cir. 2008); Cornish v. Correctional Servs. Corp., 402 F.3d 545, 549 (5th Cir. 2005).

The law is clear that under no circumstances can this defendant, the indigent defender who was appointed to represent plaintiff in the state court criminal proceedings, be considered a state actor for Section 1983 purposes as a matter of law. Polk County v. Dodson, 454 U.S. 312, 325 (1981); Small v. Dallas County, 170 Fed. Appx. 943, 2006 WL 925500, at *1 (5th Cir. 2006) (citing Hudson v. Hughes, 98 F.3d 868, 873 (5th Cir. 1996) (private attorney)); Mills v. Criminal Dist. Ct. No. 3, 837 F.2d 677, 679 (5th Cir. 1988)). Because defendant Zagory is not a state actor, plaintiff's Section 1983 claims against him have no basis in federal law, and they must be dismissed because Gallegos has failed to state a cognizable claim against him.

V.     CONDITIONS OF CONFINEMENT AT OJC

Plaintiff complains generally about various conditions of his confinement while he was incarcerated in OJC for six (6) months in 2018, including that he had inadequate access to legal materials, he was never given underwear, the showers and bathrooms had mold and the fixtures were rusted, the noise from the television sets was too loud, and he was only able to use nail clippers twice in the six months of his incarceration. These claims must be dismissed either as frivolous, because his claims lack an arguable basis in law, or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims.

An inmate must satisfy two requirements, consisting of an objective and subjective

- 16 -

component, to establish a conditions-of-confinement claim under the Eighth Amendment. Davis, 157 F.3d at 1006. "[T]he deprivation alleged must be, objectively, sufficiently serious; a prison official's act must result in the denial of the minimal civilized measures of life's necessities." Palmer v. Johnson, 193 F.3d 346, 352 (5th Cir. 1999) (internal quotation marks and citation omitted). "[E]xtreme deprivations are required" in order to meet the objective component of a conditions-of-confinement claim. Davis, 157 F.3d at 1006 (internal quotation marks and citations omitted) (emphasis added). To satisfy the subjective component, the prisoner must establish that the defendants "acted with deliberate indifference to his conditions of confinement." Harper v. Showers, 174 F.3d 716, 720 (5th Cir. 1999) (footnote omitted). As discussed in greater detail below, deliberate indifference is a stringent standard of fault that is wholly lacking from plaintiff's allegations.

(1) Inadequate Access to Legal Materials

Plaintiff alleged that during his incarceration he had inadequate access to legal materials; specifically, there was no traditional law library located in OJC. Prisoners have a First Amendment right of meaningful access to the courts through adequate law libraries or assistance from legally-trained personnel. Bounds v. Smith, 430 U.S. 817, 828 (1977); Dickinson v. TX, Fort Bend County, 325 F. App'x 389, 390 (5th Cir. 2009); Sandoval v. Johns, 264 F.3d 1142, 2001 WL 822779, at *1 (5th Cir. 2001); McDonald v. Steward, 132 F.3d 225, 230 (5th Cir. 1998); Degrate v. Godwin, 84 F.3d 768-69 (5th Cir. 1996).

However, a prisoner's law library access right is not without limitations. "While the

precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has <u>not</u> extended this right to encompass more than <u>the ability of an inmate to prepare and transmit a necessary legal document to a court.</u>" <u>Vaccaro v. United States</u>, 125 F.3d 852, 1997 WL 574977, at *1 (5th Cir. 1997) (quotation omitted) (emphasis added); <u>accord</u> <u>Manning v. Sumlin</u>, 540 F. App'x 462, 463 (5th Cir. 2011) (citing <u>Lewis</u>, 518 U.S. at 349-50; <u>Jones v. Greninger</u>, 188 F.3d 322, 325 (5th Cir. 1999)); <u>Cochran v. Baldwin</u>, 196 F. App'x 256, 257-58 (5th Cir. 2006) (citing <u>Lewis</u>, 518 U.S. at 350-51); <u>Eason v. Thaler</u>, 73 F.3d 1322, 1328 (5th Cir. 1996). In <u>Lewis</u>, the Supreme Court made clear that an inmate <u>must</u> <u>establish</u> <u>actual</u> <u>injury</u> to state a claim for denial of his right of access to the courts. <u>Id.</u> at 349-50.

Plaintiff's specific complaint in this case is that he needed law library access so that he could perform legal research related to the instant matter. He alleged that the kiosk (a computer through which inmates can request information about their case) was inadequate to perform legal research. Plaintiff testified that, upon request, state statutes or other legal materials would be provided through the kiosk, but there was no physical law library or other legal assistance at OJC. The Supreme Court has held that the touchstone of a violation of fundamental constitutional rights to the courts is whether the prisoner was <u>meaningfully</u> denied access to the courts; that is, whether "the inmate. . . demonstrate[s] that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." <u>Lewis</u>, 518 US. at 351. This can be demonstrated, according to the

Court, by showing that

> a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to even file a complaint.

Id. However, this does not mandate, however, "that the State must enable the prisoner to discover grievances and to litigate effectively once in court." Id. at 354. Instead, the Court in Lewis required only some program through which the inmates were provided with the ability to file claims in court. Id. at 352-53.

In the instant matter, it is clear from the record and plaintiff's testimony that Gallegos was not impeded from filing claims in this court. Indeed, he has been prolific in his filings in this matter. It is clear that no actual legal prejudice to Gallegos's position as a litigant of the type required by Lewis was caused by any action or omission of the defendants relating to their prevision of legal materials. "[C]ausation is an element of a [S]ection 1983 claim; [defendants'] actions must have actually caused the deprivation . . . of which [plaintiff] complains." Hart v. O'Brien, 127 F.3d 424, 446 (5th Cir. 1997), abrogated in part on other grounds as recognized in Spivey v. Robertson, 197 F.3d 772 (5th Cir. 1999); accord Brown v. Bryan County, 219 F.3d 450, 457 (5th Cir. 2000). Gallegos has not shown how the alleged lack of a physical law library, as opposed to being provided with legal materials upon request, or deficiencies in the kiosk system caused him any actual injury to his position as a litigant in these matters.

For the foregoing reasons, Gallegos's claim concerning inadequate  access to legal materials is legally frivolous and fails to state a claim upon which relief can be granted under Section 1983. It must be dismissed.

(2) No Constitutional Right to Underwear on Demand

Gallegos asserts that he did not receive free underwear while incarcerated in OJC. He testified that when he entered OJC, he was not wearing underwear. He said he later wore underwear that he found in the trash and subsequently wore another pair that he found elsewhere. This claim does not rise to the level an extreme deprivation amounting to constitutional violations cognizable under Section 1983.

"[A]dequate clothing is one of the necessities of life of which State prison officials cannot deprive an inmate." Knop v. Johnson, 667 F. Supp. 467, 475 (W.D. Mich. 1987) (citing Bellamy v. Bradley, 729 F.2d 416, 419 (6th Cir. 1984)). However, an "inmate is not entitled to the clothing of his choice." Id. The deprivation of clothing alone is not a constitutional violation. Rather, an inmate may succeed on a claim that he was deprived of clothing only if it is established that the deprivation amounted to the infliction of punishment lacking in penological justification. LeMaire v. Maass, 745 F. Supp. 623, 639 (D. Ore. 1990), vacated on other grounds, 12 F.3d 1444, 1455 (9th Cir. 1993); Knop, 667 F. Supp. at 475 (citing Rhodes v. Chapman, 452 U.S. 337, 346-47 (1981)).

In McCorkle v. Walker, 871 F. Supp. 555, 557 (N.D.N.Y 1995), aff'd, 10 F.3d 154 (D.C. Cir. 1996), the court held that the lack of a change of underwear for fifteen days was

not unconstitutional. In addition, a denial of clean clothes, without allegations of wholly unsanitary conditions, is not a violation of the Eighth Amendment. Veteto v. Miller, 829 F. Supp. 1486, 1495-96 (M.D. Pa. 1992).

Gallegos has failed to make allegations sufficient to establish that his constitutional rights were violated in this regard. His testimony does not assert that the clothing and other hygiene materials that were provided to him at OJC were constitutionally inadequate. He did not explain why a man like himself,  who was not wearing underwear as a free man before his arrest, is constitutionally entitled to be provided with it by his jailer after his arrest. Gallegos does not allege that was deprived of new underwear as punishment. He does not allege that he could not purchase underwear from the jail commissary. Prison officials may constitutionally charge inmates for certain kinds of goods and services while incarcerated. See Morris v. Livingston, 739 F.3d 740, 750-52 (5th Cir. 2013), cert. denied, 134 S. Ct. 2734 (2014) (inmates permissibly charged for medical services while incarcerated; budgetary control is a legitimate penological interest) (citing Myers v. Klevenhagen, 97 F.3d 91 (5th Cir. 1996)); Slade v. Hampton Roads Reg'l Jail, 407 F.3d 243, 246, 253 (4th Cir. 2005) (jail's policy of charging pretrial detainee one dollar per day to help defray his housing cost is not punishment and jail "has a legitimate interest in attempting to defray the costs of a prisoner's keep.").

(3) No Constitutional Right to Pristine and Rust-Free Showers and Bathrooms

Gallegos alleges that the faucets in the OJC bathroom were improperly built and

- 21 -

were rusted. He further alleges that the showers were moldy. These allegations about mold and rust in the bathrooms fail to establish constitutional violations because they do not constitute the kind of "extreme deprivation" that must be established to rise to constitutional significance. See Davis, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell) (citing Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); Davis v. St. Charles Parish Corr. Ctr., 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (Lemmon, J) (citing Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998)); Wilson v. Lynaugh, 878 F.2d 846, 849 & n.5 (5th Cir. 1989) (Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, restroom four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional.").

In two cases, the Fifth Circuit has held that extreme, virtually permanent conditions of cells that contained excrement and other filth violate the Eighth Amendment. In Harper v. Showers, 174 F.3d 716, 716 (5th Cir. 1999), there were "continual" conditions of "filthy, sometimes feces-smeared cells," and in Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004), there were "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls."

By contrast, in <u>Davis</u>, 157 F.3d at 1005, the Fifth Circuit found no constitutional violation when a prisoner was locked in a "management cell" for three days, where the cell was, "according to Davis, 'just filthy, with 'blood on the walls and excretion on the floors and bread loaf on the floor.'" <u>Davis</u>, 157 F.3d at 1004, 1006. The appeals court quoted the Supreme Court's holding that "'the length of confinement cannot be ignored. . . . A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months.'" Id. at 1006 (quoting <u>Hutto v. Finney</u>, 437 U.S. 678, 686-87 (1978)). The Fifth Circuit found that "Davis did not suffer an extreme deprivation of any 'minimal civilized measure of life's necessities'" when he was confined in the cell for only three days. Id. (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 304 (1991)).

When compared to the conditions described by the Fifth Circuit in the foregoing cases, the much less objectively unsanitary conditions described by Gallegos do <u>not</u> rise to the level of a constitutional violation. The conditions he experienced at OJC were not an <u>extreme</u> deprivation of the type that might offend the Constitution, and he admittedly suffered no physical injuries or serious ailments as a result of the allegedly unsanitary conditions.

(4) <u>Noisy TV-Watching Inmates</u>

Gallegos alleges that he was subjected to excessive noise from television sets and other inmates during lockdown times. He does not allege how the noise posed a substantial risk of serious harm to his health or safety, nor does he allege that any official knew of and

disregarded that risk. Gallegos alleged sleep deprivation and nightmares as a result of the noise, conditions that might conceivably cause harm, because "sleep constitutes a basic human need, and conditions designed to prevent sleep may violate the Eighth Amendment. However, [plaintiff's] allegations do not show the existence of noise intentionally designed to deprive him of sleep or sufficient to state a viable Eighth Amendment claim." Johnson v. Tex. Bd. of Crim Justice, 281 F. App'x 319, 322 (5th Cir. 2008) (citing Harper v. Showers, 174 F.3d 716, 720 (5th Cir. 1999); Lacy v. Collins, 66 F.3d 321, 1995 WL 535114, at *4 (5th Cir. Aug. 8, 1995)). Occasional loud noise, in the absence of a showing of deliberate indifference to the deprivation of a basic necessity of life such as sleep, does not violate the Constitution.

(5) Lack of Nail Clippers

Gallegos asserts that nail clippers were denied to him during some months of his confinement. He stated in his testimony that there was some sort of "hold" on nail clippers for some months, although he was provided some access to nail clippers at times. Pretermitting any in-depth discussion of the security issues that might arise in a prison from unlimited access by inmates to nail clippers of the type Gallegos advocates, the case law is clear that a denial of nail clippers does not rise to the level of a constitutional deprivation. See, e.g., Smith v. Gusman, 2015 WL 2066517, at *5 (E.D. La. May 4, 2015) (Knowles, M.J.); Harbridge v. Pasillas, 2011 WL 130157, at *14-15 (E.D. Cal. Jan. 14, 2011), reconsideration granted in part on other grounds, 2012 WL 639476 (E.D. Cal. Feb. 24,

2012); Banks v. York, 515 F.Supp.2d 89, 106 (D.D.C. 2007). This claim must be dismissed.

(6) No Physical Injuries

Significantly, Gallegos admitted during his testimony that he suffered no physical injuries as a result of any of these conditions. Thus, he has no right as a matter of law to recover the compensatory damages he seeks. 42 U.S.C. § 1997e(e); Hutchins v. McDaniels, 512 F.3d 193, 196 (5th Cir. 2007); Geiger v. Jowers, 404 F.3d 371, 374-75 (5th Cir. 2005); Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001).

## VI.   MEDICAL CARE

Gallegos was a pretrial detainee during most of the time period about which he complains. Before the Fifth Circuit's decision in Hare v. City of Corinth, 74 F.3d 633 (5th Cir.1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest. Bell v. Wolfish, 441 U.S. 520, 539 (1979); Cupit v. Jones, 835F.2d 82, 85 (5th Cir. 1987); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees." Pfannstiel v. City of Marion, 918 F.2d 1178, 1186 (5th Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d 449, 455 (5th Cir. 1992).

In <u>Hare</u>, however, as set out above, the Fifth Circuit held:

(1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

<u>Hare</u>, 74 F.3d at 650. The Fifth Circuit explained that for the <u>Bell</u> "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." <u>Id</u>. at 645. If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission, and the deliberate indifference standard enunciated in <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976), will apply. <u>Shepherd v. Dallas County</u>, 591 F.3d 445, 452 (5th Cir. 2009) (citing <u>Bell</u>, 441 U.S. at 539; <u>Scott v. Moore</u>, 114 F.3d 51,53 (5th Cir. 1997); <u>Hare</u>, 74 F.3d at 649); <u>Tamez v. Manthey</u>, 589 F.3d 764, 769-70 (5th Cir. 2009) (citing <u>Scott</u>, 114 F.3d at 53; <u>Hare</u>, 74 F.3d at 649).

In <u>Estelle</u>, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by

prison officials or other state actors. Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. Estelle, 429 U.S. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Tamez, 589 F.3d at 770; Hare, 74 F.3d at 650. "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). The Farmer definition applies to Eighth Amendment medical claims. Reeves, 27 F.3d at 176.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. If the court finds that one of the components of the test is not met, it need not address the other component. Davis, 157 F.3d at 1005. "First, the deprivation alleged must be, objectively, 'sufficiently serious;' a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (quotation omitted). Thus, plaintiff must show that defendants "exhibited deliberate indifference to his serious medical needs." Cooper v. Johnson, 353 F. App'x 965, 967 (5th Cir. 2009) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)); accord Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298). A prison official cannot be held

- 27 -

liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; accord Tamez, 589 F.3d at 770 (citing Thompson v. Upshur County, 245 F.3d 447, 458-59 (5th Cir. 2001)). "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Brewster v. Dretke, 587 F.3d 764, 770 (5th Cir. 2009), cert. denied, 130 S. Ct. 3368 (2010) (quoting Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." . . . The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (quoting Board of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (other quotations omitted))(emphasis added); accord Tamez, 589 F.3d at 770. "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997).

In the instant case, plaintiff's pleadings, as expanded by his testimony, establish

that nothing more than episodic acts or omissions as defined in Hare are at issue. See Tamez, 589 F.3d at 770 (defendants' alleged refusal "to provide [prisoner] with immediate medical treatment qualifies as an 'episodic act or omission'"). Therefore, the "deliberate indifference" standard applies, and Gallegos must allege facts sufficient to establish that defendants knew he faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it. In this case, plaintiff wholly fails to allege facts sufficient to satisfy the stringent "deliberate indifference" standard.

Initially, it cannot be concluded that the headaches, past psychological diagnoses or pain from preexisting injuries that he described presented a serious medical need that posed a substantial risk of harm for purposes of constitutional analysis. Gallegos did not suffer "a life-long handicap or permanent loss" of the type required to constitute a serious medical need for constitutional purposes. See Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 overruled in part on other grounds by Hope v. Peltzer, 536 U.S. 730, 739 (2002) (citing Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (medical need is serious when it "results in an inmate's suffering 'a life-long handicap or permanent loss'")).

Even assuming, however, without concluding that plaintiff's conditions presented serious medical needs for constitutional purposes, Gallegos has alleged facts, confirmed by his testimony and the medical records, that negate any inference of deliberate indifference by jail officials. His complaint, as amended by his testimony and confirmed

by the medical records, shows that he received constitutionally adequate medical care while incarcerated in OJC. Gallegos testified that he was examined and treated by a doctor and nurses at the jail, that he received medication for his seizures, headaches and pain from preexisting injuries. The verified medical records confirm that he was taken for "chronic care" treatment and examination at least four (4) times during his OJC incarceration. Record Doc. No. 24.  Moreover, his medical restrictions generated by his clinic visits resulted in orders that he sleep on a bottom bunk, Practitioner Chronic Care Order Set Form #1, 5/4/18, with weight restrictions on his work. Id.

Contentions like Gallegos's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); accord Rowe v. Norris, 198 Fed. Appx. 579, 2006 WL 2711945, at *2 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication); Marksberry v. O'Dea, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999) (plaintiff who alleged inadequate treatment for broken hand failed to state constitutional violation, when he was examined by physician and received x-rays and medication);

Williams v. Browning, 2006 WL 83433, at *1, *3 (S.D. Tex. Jan. 11, 2006) (inmate with

diabetes, hypertension, anxiety and chronic knee ailment who alleged that he was unable

to obtain his medications timely, but did not establish any substantial harm from the

delay, failed to state a claim for deliberate indifference).

Gallegos's complaints in this case about his medical care fail to state a claim of

violation of his constitutional rights sufficient to obtain relief under Section 1983 because

he cannot establish deliberate indifference under the applicable constitutional standard.

Thus, plaintiff's complaints about his medical care advance a legally frivolous argument

and fail to state a claim for relief based upon violation of his constitutional rights under

Section 1983.

VII.   PENDING MOTIONS FOR INJUNCTIVE RELIEF

Plaintiff has also filed motions for injunctive relief related to the claims discussed

above. Record Doc. Nos. 18, 21 and 22. For the reasons set out in detail above, plaintiff has

failed to state any cognizable claim of violation of his constitutional rights that might entitle

him to any relief. Accordingly, for these same reasons, it is recommended that these

motions for injunctive relief be denied.

VIII.   ORDER AND REASONS ON NON-DISPOSITIVE MOTIONS

Plaintiff has filed several motions to supplement or amend his complaint. Record

Doc. Nos. 18, 20, 39 and 40. The policy of the Federal Rules of Civil Procedure is liberal

in favor of permitting amendment of pleadings, and Rule 15(a) evinces a bias in favor of

granting leave to amend.  Unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial.  <u>Stripling v. Jordan Prod. Co.</u>, 234 F.3d 863, 872 (5th Cir. 2000) (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>Leffall v. Dallas Indep. Sch. Dist.</u>, 28 F.3d 521, 524 (5th Cir. 1994); <u>Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Am. Co.</u>, 195 F.3d 765, 770 (5th Cir. 1999); <u>Dussouy v. Gulf Coast Inv. Corp.</u>, 660 F.2d 594, 597-98 (5th Cir. 1981)). Thus, "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2). However, such leave "is <u>by no means automatic</u>." <u>Wimm v. Jack Eckerd Corp.</u>, 3 F.3d 137, 139 (5th Cir. 1993) (quotation omitted) (emphasis added).  Relevant factors to consider include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment."  <u>Id.</u>

As to futility, the Fifth Circuit has held:

> It is within the district court's discretion to deny a motion to amend if it is futile.  While this court has not specifically defined "futility" in this context, we join our sister circuits that have interpreted it to mean that the amended complaint would fail to state a claim upon which relief could be granted.  As these courts have done, to determine futility, we will apply the same standard of legal sufficiency as applies under Rule 12(b)(6).

<u>Stripling v. Jordan Prod. Co., LLC</u>, 234 F.3d 863, 872-73 (5th Cir. 2000) (quotations and citations omitted).

In this case, Gallegos's amendments all relate to the same complaints concerning

his arrest, conviction, medical care and other conditions of his OJC confinement discussed above. They all fail to state a claim upon which relief could be granted for the same reasons set forth in the foregoing report and recommendation. Accordingly, these motions are futile. IT IS ORDERED that they are DENIED for these reasons.

## RECOMMENDATION

For all of the foregoing reasons, IT IS RECOMMENDED that plaintiff's motions for injunctive relief, Record Doc. Nos. 21 and 22, be DENIED and that plaintiff's complaint be DISMISSED WITH PREJUDICE as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).

New Orleans, Louisiana, this ____10th____ day of December, 2018.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

- 33 -